## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ODW LOGISTICS, INC.,**

        **Plaintiff,**

              **Case No. 2:12-cv-00996**
     **v.**               **JUDGE GREGORY L. FROST**
              **Magistrate Judge Mark R. Abel**

**KARMALOOP, INC.,**

        **Defendant.**


**KARMALOOP, INC.**
        **Plaintiff,**

              **Case No. 2:13-cv-00270**
     **v.**               **JUDGE GREGORY L. FROST**
              **Magistrate Judge Mark R. Abel**

**ODW LOGISTICS, INC.,**

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the ODW Logistics, Inc.'s Motion to Dismiss Claims I, III, and IV of Karmaloop, Inc.'s Counterclaim (ECF No. 28), Karmaloop, Inc.'s memorandum in opposition (ECF No. 32), and ODW Logistics, Inc.'s reply memorandum (ECF No. 38).[1]  For the reasons stated below, the Court **GRANTS** ODW Logistics, Inc.'s motion to dismiss as to Claims I and IV of Karmaloop, Inc.'s counterclaim and **DENIES** ODW Logistics, Inc.'s motion to dismiss as to Claim III of Karmaloop, Inc.'s counterclaim.

---

[1] Unless otherwise indicated, all citations to filings on the docket are to documents filed in Case No. 2:12-cv-00996.

1

## I. Background

Case No. 2:12-cv-00996 is one of two related cases before the Court that arise from the business relationship between ODW Logistics, Inc. ("ODW") and Karmaloop, Inc. ("Karmaloop"). ODW is a warehousing and logistics company with its primary place of business in Columbus, Ohio. Karmaloop is an online clothing retailer and lifestyle brand that buys, markets, and sells streetwear clothing and accessories. In July 2006, Karmaloop and ODW entered into a Warehouse Distribution Services Agreement. Under the agreement, ODW was to provide certain warehouse, distribution, and fulfillment services to Karmaloop.

In February 2012, Karmaloop notified ODW of its intention to exercise its right to terminate the Distribution Services Agreement. ODW accepted the termination. In May 2012, Karmaloop and ODW entered into a new agreement, the Transition Services Agreement ("TSA"), to govern termination of the business relationship. The TSA modified and then terminated the Distribution Services Agreement. The claims in Case No. 2:12-cv-00996 are based solely on the TSA. The TSA specifically set forth the duties of each party and a general timeline for the relocation of Karmaloop's inventory.

At least a part of Karmaloop's goods were transferred from the ODW facility to its new distribution and fulfillment center by June 26, 2012. Karmaloop began fulfilling some customer orders in the beginning of July 2012.

Karmaloop challenges the binding effect of the TSA as a whole; particularly at issue is Section IV(c) *Liability for Goods*. Under Section IV(c), ODW is liable for inventory shortages that are in excess of a total net inaccuracy of 7.5 percent based on a Confirmation Inventory.

2

(ECF No. 1-1 at Page ID # 12-13.)  Karmaloop was obligated to complete a Confirmation Inventory upon arrival of the goods from ODW and provide a report of such to ODW no later than 30 days after the final delivery of goods.  Karmaloop admits that it did not provide a Confirmation Inventory to ODW within 30 days of receipt of the final delivery.

Attempts by Karmaloop to invoke the mediation provision of the TSA were unsuccessful; ultimately Karmaloop filed a lawsuit against ODW in the United States District Court for the District of Massachusetts alleging breach of contract and tort claims.  ODW subsequently filed Case No. 2:12-cv-00996, seeking declaratory judgment of its rights and liabilities under the TSA. (ECF No. 1.)  Karmaloop responded by raising various affirmative defenses and counterclaims for (1) declaratory judgment that the TSA is not legally binding; (2) conversion; (3) violation of M.G.L. c. 93A; and (4) breach of contract.  (ECF No. 22.)

The Massachusetts litigation (Case No. 2:13-cv-00270) has been transferred to this Court, and the cases have been consolidated.  The motion to dismiss *sub judice* applies only to the counterclaims raised by Karmaloop in Case No. 2:12-cv-00996.

## II. Standard Involved

ODW brings this motion to dismiss Counterclaims I, III, and IV for failure to state a claim upon which this Court can grant relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss for failure to state a claim requires the Court to construe Karmaloop's pleading in its favor, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The Supreme Court has explained, however, that

3

"the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  This means that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right of relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).  The same standard applies to counterclaims. *Cf. Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 401 (6th Cir. 2012), *cert. granted*, No. 12-873, 2013 WL 182751 (June 3, 2013).

Under Rule 12(b)(6), the Court may not consider evidence outside Karmaloop's pleading unless it is referenced in the counterclaim and is central to Karmaloop's claims. *Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 819 (S.D. Ohio 1999).  *See Hammond*, 866 F.2d at 175 ("Matters outside the pleadings are not to be considered."); *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint.").  Considering documents and exhibits other

than those incorporated into or referenced by the counterclaim would convert the motion into one for summary judgment. *See Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012); *Hensley*, 579 F.3d at 613; *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)  Accordingly, this Court will not consider the affidavit attached to Karmaloop's memorandum in opposition (ECF No. 32) because it is not material that can be considered on a motion to dismiss. *See Streit v. Bushnell*, 424 F. Supp. 2d 633, 639 n.3 (S.D.N.Y. 2006) (explaining that the court would not consider an affidavit attached to a motion where it was not attached to or incorporated into the complaint); *Hermes v. Hein*, 479 F. Supp. 820, 824 (N.D. Ill. 1979) (same).

### III. Discussion

**A. Declaratory Judgment that the TSA is Not Binding on Karmaloop (Claim I)**

Karmaloop's first counterclaim seeks declaratory judgment that the TSA is not valid and binding and that ODW cannot enforce any rights under the TSA.  Karmaloop argues that the contract is invalid because it was entered into under economic duress.  In the alternative, Karmaloop argues that it is not bound to perform because ODW materially breached the contract.  (ECF No. 22 at Page ID # 162-63.)  The Court shall address each theory in turn.

#### *1. Economic Duress*

Under Ohio law, Karmaloop is required to show that three elements exist to rely upon the doctrine of economic duress. *Blodgett v. Blodgett*, 49 Ohio St. 3d 243, 246, 551 N.E.2d 1249, 1251 (Ohio 1990). "These are (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result

of coercive acts of the opposite party." *Id.* (quoting *Urban Plumbing & Heating Co. v. United States*, 408 F.2d 382, 389-90 (Ct. Cl. 1969)) (emphasis removed).

Karmaloop argues that ODW forced it to enter into the TSA by threatening to prevent the transfer of Karmaloop's inventory out of the ODW warehouse and to Karmaloop's new distributor.  ODW claims that even if it made the threats, Karmaloop cannot bring a claim for economic duress because reasonable alternatives to entering the agreement were available. Karmaloop cannot invalidate the TSA for economic duress if reasonable alternatives existed at the time the agreement was entered.  *See First Nat'l Bank of Shelby v. Stump*, No. 3-95-22, 1996 WL 71472, at *2 (Ohio Ct. App. Feb. 14, 1996) (quoting *Maust v. Bank One Columbus, N.A.*, 83 Ohio App. 3d 103, 108 (Ohio Ct. App. 1992)) (internal quotation marks omitted) ("In other words, duress results if the party was subjected to improper threats which deprived that [party] of any reasonable alternative but to assent to the terms of the person making the threat.")

Even necessarily accepting the factual allegations of Karmaloop's pleading as true, the Court must conclude that Karmaloop cannot prove that the "circumstances permitted no other alternative."  Karmaloop had reasonable alternatives available.  The courts offer many legal remedies that would have been sufficient to relieve the alleged threats.  For example, Karmaloop could have sought injunctive relief or to initiate a replevin action.

Karmaloop's argument that these remedies were not sufficient or reasonable under the circumstances fails to acknowledge the ability of the courts to act quickly when circumstances demand immediate action.  Instead of waiting two months to seek alternative relief via the TSA, Karmaloop could have timely pursued control of its merchandise through court action.  *See*

6

*Mooneyhan v. Husted*, 3:12-cv-379, 2012 WL 5834232 (S.D. Ohio Nov. 16, 2012) (ruling on a

motion for a temporary restraining order within 10 days); *White of Dublin, LLC v. After the Ring,*

*LLC*, 2:13-cv-120, 2013 WL 1399337 (S.D. Ohio Apr. 5, 2013) (temporary restraining order

issued in one day); *Book Dog Books, LLC v. Cengage Learning, Inc.*, 2:12-cv-1165, 2012 WL

65465 (S.D. Ohio Jan. 4, 2013) (ruling on temporary restraining order issued the same day).  *See*

*also Verathon, Inc. v. Dex One Serv., Inc.*, 2:13-cv-205, 2013 WL 1627073 (S.D. Ohio Apr. 16,

2013) (ruling issued in replevin action in just over one month); *Bunn Enters., Inc. v. Ohio*

*Operating Eng'rs Fringe Benefit Program*, 2:13-cv-357, 2013 WL 3147956 (S.D. Ohio June 19,

2013) (preliminary injunction ruling in two months); *Snead v. Mohr*, 2:12-cv-00739, 2012 WL

1344965 (S.D. Ohio Jan. 30, 2013) (same).  Such a small lapse in time would not have made

injunctive relief or a replevin action unavailable to Karmaloop.  Karmaloop entered into the TSA

at least a full month before it moved goods out of ODW's warehouse.

Furthermore, any question as to the ability of Karmaloop to seek efficient recourse from

the courts was created by the company's own actions.  Karmaloop ended the Distribution

Services Agreement in February and did not sign the TSA until May.  By its own admission,

Karmaloop attempted to negotiate the terms of the TSA to be more favorable.  Karmaloop's own

delay in seeking reasonable alternatives caused many remedies to be unavailable.  Karmaloop is

a sophisticated party represented by legal counsel.  It cannot be permitted to evade its obligations

just because it chose to proceed forward with negotiations rather than pursue immediate relief

through the courts.  The doctrine of economic duress is not intended to protect the imprudent.

*See Comprise Techs., Inc. v. Techwekrs, Inc.*, 274 Ga. App. 673, 682, 618 S.E.2d 664, 672 (Ga.

Ct. App. 2005) ("And, in any event, when the signer of an agreement is sophisticated in business matters and has access to and in fact obtains advice of counsel, the defense of duress is not available to void the contract."); *Krilich v. Am. Nat'l Bank & Trust Co.*, 334 Ill. App. 3d 563, 573 (Ill. App. Ct. 2002) (dismissing claims of economic duress where the party "enjoyed access to legal counsel during the three-month negotiation period and because [the party] had an adequate potential judicial remedy"); *Peoples Mortg. Co., Inc. v. Fed. Nat'l Mortg. Ass'n*, 856 F. Supp. 910, 921 (E.D. Pa. 1994) (finding that the failure of the party to seek immediate legal remedy and instead entering into negotiations with opposing the party reinforced the finding that the remedy of economic duress was unavailable).

Alternative remedies were still available to Karmaloop when it signed the TSA, and the party's own actions made other remedies unavailable. Because Karmaloop has failed to present plausible grounds on which it could prove that no reasonable alternative existed, its economic duress argument fails as a matter of law.

### 2. Material Breach of Contract

Karmaloop argues that even if it did not enter into the TSA under economic duress, ODW materially breached the TSA. The TSA provides that ODW "shall prepare the goods for relocation in an as-is condition and, except as expressly provided herein, ODW shall have no liability for the count or condition of those goods[.]" (ECF No. 1-1 at Page ID # 12-13.) Section IV(c)(ii) of the TSA provides that "ODW shall be responsible for Karmaloop inventory shortages only if the Confirmation Inventory reveals a net inaccuracy (against ODW's final closing balance count) of more than 7.5%." *Id.* at Page ID # 13.

Karmaloop seeks declaratory relief under two theories of material breach.  First, Karmaloop construes Section IV of the TSA to require ODW to deliver Karmaloop's inventory with a less than 7.5 percent net inaccuracy.  Based on this construction, Karmaloop argues that ODW materially breached the TSA by delivering the inventory with a greater than 7.5 percent net inaccuracy.  This Court disagrees.  Karmaloop's interpretation of the TSA is not supported by the plain language of the agreement.  Second, Karmaloop argues that ODW materially breached by failing to pay for inventory shortages.

Karmaloop's arguments fail as a matter of law because no construction of the TSA puts an obligation on ODW to deliver goods with less than a 7.5 percent net inaccuracy.  Additionally, Karmaloop cannot prove a breach of contract claim because it did not substantially perform its obligations under the TSA.

Karmaloop has misconstrued the obligations that ODW has under the TSA.  The provisions of Section IV do not operate as an affirmative duty to deliver goods with less than a 7.5 percent net inaccuracy.  The TSA simply obligates ODW to pay for any inaccuracies over 7.5 percent if Karmaloop successfully performs its obligations under the TSA.  The only obligation that ODW had to perform was to prepare the goods for relocation.  Neither party disputes that ODW so performed.

In order to give effect to each part of the TSA, Section IV has to limit liability, not impose an affirmative duty.  In construing the contract, the Court "must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage[.]" *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994).

Karmaloop's construction would render "ODW shall not be liable" as superfluous.  The TSA does not need to state that ODW is not liable for obligations that are not imposed on ODW by the contract.  A party is not required to perform any act beyond the acts that the party agreed to perform.  *See Harris v. Hardeman*, 55 U.S. 334, 339 (1852) ("[I]t would seem to be a legal truism, too palpable to be elucidated by argument . . . that no person can be in default with respect to that which it never was incumbent upon him to fulfil[l].")  In order to give effect to each part of the TSA, Section IV(c)(ii) must impose a limit to liability rather than an affirmative duty.  ODW did not materially breach the TSA because Section IV(c)(ii) does not impose any affirmative obligation to act beyond preparing the goods for transport.

Under Ohio law, "[t]here are four main elements of a breach of contract claim: (a) the existence of a contract; (b) *performance by the plaintiff*; (c) breach by the defendant; and (d) damage or loss to the plaintiff."  *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (emphasis added).  Even if Karmaloop has not engaged in perfect performance, the party has not breached the contract "when that party substantially performs the terms of the contract."  *Burlington Res. Oil & Gas Co. v. Cox*, 133 Ohio App. 3d 543, 548, 729 N.E.2d 398, 402 (Ohio App. Ct. 1999).  "Nominal, trifling, or technical departures from the terms of a contract are not sufficient to breach it."  *Id.*

Generally the time of performance is not significant, but when the parties have included an express stipulation of time then the time of performance is of the essence of the contract.  *Brown v. Brown*, 90 Ohio App. 3d 781, 784, 630 N.E.2d 763, 765 (Ohio App. Ct. 1993).  The Court can also find that such a requirement is implied from the nature of the agreement itself.  *Id.*

10

*See also Mays v. Hartman*, 81 Ohio App. 408, 412, 77 N.E.2d 93, 96 (Ohio App. Ct. 1947) (quoting Restatement (First) of Contracts §276 (1932)) ("Unless the nature of a contract . . . make[s] performance on the exact day agreed upon of vital importance, or the contract in terms provides that is shall be so, failure by a promisor to perform his promise on the day . . . does not discharge the duty of the other party.") (internal quotation marks omitted); *Indep. Lift Truck, Inc. v. Peitti Enters., Inc.*, No. 54875, 1988 WL 140567, at *4 (Ohio App. Ct. Dec. 19, 1988) (finding that the failure of one party to perform by a certain date does not relieve other party of its obligations unless "(1) the nature of the contract makes [performance] by that date vitally important, or (2) the contract expressly provides that time is of the essence"); *Gardner v. Hidden Harbour Partners*, No. L-97-1182, 1997 WL 799710, at *3 (Ohio App. Ct. Dec. 31, 1997) ("It has long been held that generally time is not of the essence unless it has been made so by the express terms of the contract, or if the parties have treated it as such, or the nature of the contract requires it.").

The TSA expressly states a time for performance so "time is of the essence" by agreement.  Karmaloop was obligated by the plain language of the TSA to provide a confirmation inventory to ODW within 30 days of the last shipment.  "An ambiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Affiliated FM Ins. Co.*, 16 F.3d at 686 (quoting *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991)) (internal quotation marks omitted).  It is clear from the TSA that any obligation of ODW to pay can arise "only if the Confirmation Inventory reveals net inaccuracy."  (ECF No. 1-1 at Page ID # 13.)

Karmaloop was required by the unambiguous language of the TSA to provide ODW with a
confirmation inventory showing a net inaccuracy in excess of 7.5 percent within 30 days.  But
Karmaloop expressly admits in its pleading that it did not provide the inventory within the
specified time.  (ECF No. 22 at Page ID # 157 at ¶ 20.)

The circumstances of the TSA also make time important.  The nature of an online retail
business is to sell inventory.  Karmaloop has placed particular emphasis on the need to get to its
inventory in order to fulfill orders.  The confirmation inventory needed to be performed quickly
in order to be reliable before products were moved out of the inventory.  Further, ODW was
allowed to perform its own inspection "on 48 hours notice to Karmaloop (calculated from the
time ODW receives the Confirmation Inventory report from Karmaloop)."  (ECF No. 1-1 at Page
ID # 13.)  This rapid turnaround further establishes the need for prompt action in order to get an
accurate inventory of the goods.  With major delays, the protection bargained for by either party
would be lost.

The language and circumstances of the TSA make time of the essence of the agreement.
Karmaloop was obligated to perform within 30 days.  Because its failing to do so was more than
a "nominal, trifling, or technical" departure from the terms of the contract, Karmaloop did not
substantially perform its obligations under the TSA.  Karmaloop therefore cannot establish the
second element of a breach of contract claim, under Ohio law, performance by the plaintiff.
Karmaloop cannot succeed on the merits for breach of contract as a matter of law.

Because this Court finds that Karmaloop's pleading does not state a plausible claim for relief under either the theory of economic duress or material breach, the Court **GRANTS** ODW's motion to dismiss counterclaim I.

### B. Violation of M.G.L. c. 93A (Claim III)

In its third counterclaim, Karmaloop alleges that ODW has violated the Massachusetts' law prohibiting businesses from engaging in unfair and deceptive practices.  Mass.Gen .Laws ch. 93A (1972).  Section 11 of Chapter 93A gives businesses a cause of action against other businesses for a violation of the law.  *Id.* at §11.  Karmaloop alleges that ODW's actions constituted unfair and deceptive acts and practices within the meaning of Chapter 93A and caused Karmaloop to suffer damages.

Karmaloop's pleading is sufficient to put ODW on notice of the grounds for the claim of violation of Chapter 93A.  The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Karmaloop provided a sufficiently detailed list of factual allegations and incorporated those allegations into its counterclaim.  (ECF No. 22 at Page ID # 159-62, 163.)  The language of the counterclaim expressly states that Karmaloop is alleging that all conduct that ODW engaged in that is unfair and deceptive is a violation of M.G.L. c. 93A.  *Id.* at Page ID # 163.

Karmaloop's counterclaims, although sparse, meet the standard of *Twombly*.  *Twombly* only requires that the pleadings do more than state legal conclusions and provide enough information to put the opposing party on notice of the claims against it.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The facts alleged must also give rise to more than "a

suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller,

Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)) (alteration in original).  Chapter

93A claims are not subject to a heightened pleading standard when they do not allege fraud.

*Declude, Inc. v. Perry*, 593 F. Supp. 2d 290, 296 (D. Mass. 2008).

ODW was put on notice by the pleading.  Under M.G.L. c. 93A, the alleged facts do not

need to establish an independent tort, the facts only need establish behavior which falls "within

the penumbra of some … established concept of unfairness, and is sufficiently unethical or

unscrupulous to be actionable under the statute." *Patricia Kennedy & Co., Inc. v. Zam-Cul

Enters., Inc.*, 830 F. Supp. 53, 59 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 516 (1st

Cir. 1988)) (internal quotation marks omitted).  ODW should be able to determine which of the

alleged actions would fall within some "established concept of unfairness."  The complaint need

only contain sufficient factual allegations to put ODW on notice.  *See Marshall v. Stratus

Pharms., Inc.*, 51 Mass. App. Ct. 667, 678-79, 749 N.E.2d 698, 709 (Mass. App. Ct. 2001);

*Watson v. N. States Ins. Agency, Inc.*, 72 Mass. App. Ct. 1115, 893 N.E.2d 96 (Mass. App. Ct.

2008).  Although the claim could have been more artfully pleaded, this Court concludes that

ODW was sufficiently able to understand which factual allegation would be considered unfair or

deceptive in the business community.

A mere breach of contractual duty does not lead to c. 93A liability.  *Anthony's Pier Four,

Inc. v. HBC Assocs.*, 411 Mass. 451, 474, 583 N.E.2d 806, 821 (Mass. 1991).  A breach of the

covenant of good faith and fair dealing can, however, be a violation of c. 93A.  *Id.*  If ODW was

shown to have made threats to better its bargaining position, then this could constitute a violation

14

of M.G.L. c. 93A.  *See Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 17-18 (1st Cir. 1985) (business that withheld money in an undisputed amount in order to gain a better bargaining position found to be in violation of c. 93A); *Frank J. Linhares Co. v. Reliance Ins. Co.*, 4 Mass. App. Ct. 617, 622-23, 357 N.E.2d 313, 318 (Mass. App. Ct. 1976) (finding that a business withholding a truck that it damaged in order to coerce owner into signing a release constitutes an unfair and deceptive practice within the meaning of the act).

The Court acknowledges that this is a close call based on the sparse allegations of the counterclaim.  But accepting the facts alleged by Karmaloop as true, there are sufficient facts to make at least one viable claim that ODW engaged in unfair and deceptive business practices within the meaning of M.G.L. c. 93A.  The Court **DENIES** ODW's motion to dismiss counterclaim III.

### C. Breach of Contract (Claim IV)

Although pled in the alternative, Karmaloop's fourth counterclaim is premised on the same flawed contractual interpretations as its material breach arguments under Claim I.  For the reasons already stated in Section III.A.2., *supra*, this Court **GRANTS** ODW's motion to dismiss Claim IV of Karmaloop's counterclaims.

15

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** ODW's motion to dismiss in regard to

Claims I (Declaratory Judgment) and IV (Breach of Contract) of Karmaloop's counterclaims and

**DENIES** ODW's motion in regard to Claim III (Violation of M.G.L. c. 93A).  (ECF No. 28.)

       **IT IS SO ORDERED**.

                                 /s/ Gregory L. Frost

                          GREGORY L. FROST

                          UNITED STATES DISTRICT JUDGE