# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ODW LOGISTICS, INC.,**

    **Plaintiff,**

  v.

**KARMALOOP, INC.,**

    **Defendant.**

**Case No. 2:12-cv-996**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**


**KARMALOOP, INC.,**

    **Plaintiff,**

  v.

**ODW LOGISTICS, INC.**
    **Defendant.**

**Case No. 2:13-cv-270**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**

## OPINION AND ORDER

This matter is before the Court for consideration of a motion for partial summary judgment (ECF No. 42) filed by ODW Logistics, Inc., a memorandum in opposition (ECF No. 48) filed by Karmaloop, Inc., and a reply memorandum (ECF No. 49) filed by ODW Logistics, Inc.[1]  For the reasons that follow, the Court finds the motion well taken in part.

### I.  Background

ODW Logistics, Inc. ("ODW") is a warehousing and logistics company with its primary place of business in Columbus, Ohio.  Karmaloop, Inc. ("Karmaloop") is an online clothing retailer and lifestyle brand that buys, markets, and sells streetwear clothing and accessories.  In

---

[1] Unless otherwise indicated, all citations to filings on the docket are to documents filed in Case No. 2:12-cv-996.

July 2006, Karmaloop and ODW entered into a Warehouse Distribution Services Agreement. Under that agreement, ODW was to provide certain warehouse, distribution, and fulfillment services to Karmaloop. In February 2012, however, Karmaloop notified ODW of its intention to exercise its right to terminate the Distribution Services Agreement.

Consequently, in May 2012, Karmaloop and ODW entered into a new agreement, the Transition Services Agreement ("TSA"), which was to govern the termination of their business relationship. The TSA modified and then terminated the Warehouse Distribution Services Agreement. The TSA specifically set forth the duties of each party and a general timeline for the relocation of Karmaloop's inventory.

Section IV(c) of the TSA provided when ODW would and when it would not be liable for any damage or variance to the Karmaloop goods that would be relocated from the ODW facilities. For liability to exist, Karmaloop had to conduct a physical inventory of the goods that it received from ODW, which the TSA designated a Confirmation Inventory, no later than 30 days after ODW delivered the goods involved to Karmaloop's replacement facility. Section VI(a) of the TSA then provided that ODW and Karmaloop would execute a final release that would resolve all claims for payments, all liabilities, and all future claims between the parties.

In July 2012, the parties executed a Mutual Release and Hold Harmless ("the Release") in accordance with Section VI(a). That document provides in relevant part:

> Each Releasing Party, on behalf of itself and each of its agents, representatives, predecessors in interest, successor and assigns, employees, subsidiaries, affiliated entities, insurers and anyone acting on their behalf, hereby releases and forever holds harmless and discharges the other Party, and its heirs, agents or assigns (each, a "Releasee") from any and all claims, demands, proceedings, causes of action, orders, obligations, contracts, unsuspected, both at law and in equity, which each of the Releasing Parties now has, have ever had or may hereafter have against the Releasee arising contemporaneously with or prior to the

> Effective Date of the Agreement, or on account of or arising out of any matter, cause or event occurring contemporaneously with or prior to the Effective Date, whether pursuant to the Original Contract (referenced and defined in the Agreement), any contract or otherwise arising under law or equity and whether or not relating or not relating to claims pending on, or asserted after, the Effective Date, provided that Karmaloop or ODW, as the case may be, shall fully perform its obligations under the Agreement in order to be entitled to the benefits of this Release as a Releasee.
>
> Each Releasing Party hereby irrevocably covenants to refrain from, directly or indirectly, asserting any claim or demand, or commencing, instituting or causing to be commenced, any proceeding of any kind against any Releasee, based upon any matter purported to be released hereby. The claims released by Karmaloop shall not apply to claims for loss of Goods caused by ODW in accordance with the Confirmation Inventory provisions of Section IC(C) of the Transition Services Agreement by and between Karmaloop and ODW dated May 16, 2012.

(ECF No. 42-1, at Page ID # 351.) Despite the language of the Release, the parties' involvement with one another did not smoothly conclude.

In June 2013, ODW made its final shipment of goods to Karmaloop. There is an alleged variance of 42,294 units between what ODW returned to Karmaloop and what ODW should have returned to Karmaloop. Karmaloop did not provide a Confirmation Inventory to ODW within 30 days of receipt of this final delivery of its goods. Instead, in October 2012, Karmaloop unsuccessfully attempted to invoke a mediation provision of the TSA and filed a lawsuit against ODW in the United States District Court for the District of Massachusetts, alleging breach of contract and various tort claims. (ECF No. 1 in 2:13-cv-270.) ODW in turn filed a lawsuit in this Court, Case No. 2:12-cv-996, seeking declaratory judgment of its rights and liabilities under the TSA. (ECF No. 1.) In February 2013, Karmaloop responded by asserting various counterclaims: declaratory judgment that the TSA is not legally binding; conversion; violation of the Massachusetts unfair and deceptive practices act, M.G.L. c. 93A; and breach of contract. (ECF No. 22.) In March 2013, the Massachusetts litigation was then transferred to this Court

and assigned Case No. 2:13-cv-270.  This Court consolidated the cases in April 2013.  (ECF No. 34.)

Prior to that consolidation, ODW had filed a motion to dismiss the counterclaims raised by Karmaloop in Case No. 2:12-cv-996.  (ECF No. 28.)  Following consolidation, this Court filed a July 2013 Opinion and Order in which the Court dismissed Karmaloop's counterclaims for declaratory judgment and breach of contract.  (ECF No. 39.)  ODW has now filed a motion for partial summary judgment on its claim for declaratory judgment in Case No. 2:12-cv-996, Karmaloop's counterclaim for conversion in Case No. 2:12-cv-996,  Karmaloop's claim for breach of contract in Case No. 2:13-cv-270, and Karmaloop's claim for breach of the implied covenant of good faith and fair dealing in Case No. 2:13-cv-270.  (ECF No. 42.)  The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of

4

material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

   B.  **Analysis**

      1.  ***Declaratory Judgement***

   In Case No. 2:12-cv-996, ODW asserts a single claim for declaratory judgment. ODW seeks a declaration from this Court that Karmaloop cannot pursue inventory shortage claims related to the Confirmation Inventory as a result of Karmaloop's alleged failure to provide ODW with such an inventory and Karmaloop's purported failure to negotiate in good faith. Citing this Court's July 2012 Opinion and Order (ECF No. 39, incorporated herein by reference), ODW seeks summary judgment on the grounds that this Court resolved the issue when it dismissed Karmaloop's counterclaim seeking a declaration that the TSA was unenforceable.

   This Court agrees with ODW. In reaching this conclusion, the Court rejects Karmaloop's newfound reliance on a theory of commercial extortion under the Massachusetts unfair and deceptive practices act, M.G.L. c. 93A, and the debatable remedy of rescission as supporting Karmaloop's attempt at obtaining declaratory judgment. Simply stated, Karmaloop is raising now an argument it should have raised before and cannot resurrect a failed claim or defeat a

controlling adverse rationale based on hindsight strategic maneuvering. To conclude otherwise would be to invalidate this Court's prior decision regarding whether the TSA is binding. Karmaloop should have raised its newfound argument previously. Instead, Karmaloop relied only on two narrow grounds, and Karmaloop is stuck with its litigation choices. Those choices lead to the conclusion that because Karmaloop failed to comply with Section IV(c) of the TSA by providing ODW with the Confirmation Inventory within the requisite time period, Karmaloop is barred from asserting inventory-related claims under the TSA. ODW is therefore entitled to a declaratory judgment in this regard.

### 2. Conversion

In Case No. 2:12-cv-996, Karmaloop asserts a counterclaim for conversion, contending that ODW retained Karmaloop goods. ODW argues that this conversion claim is simply Karmaloop's attempt to circumvent the effect of the TSA by obtaining recovery under a tort theory for inventory shortage that Karmaloop could not address via breach of contract. ODW seeks summary judgment on this counterclaim on the grounds that the economic loss doctrine and this Court's prior decision that Karmaloop cannot recover for any inventory shortage as a result of its failure to provide ODW with a timely Confirmation Inventory preclude the conversion claim.

The Sixth Circuit has explained that, "[u]nder Ohio law, '[t]he economic-loss rule generally prevents recovery in tort damages for purely economic loss.' " *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (quoting *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 414, 835 N.E.2d 701, 704 (2005)). Karmaloop opposes summary judgment by arguing that the economic loss doctrine cannot bar the intentional tort of

conversion.

Karmaloop reaches this conclusion by relying on case law indicating that Ohio's economic loss doctrine "applies only in negligence cases, not in cases involving intentional torts." *Eysoldt v. Proscan Imaging*, 194 Ohio App.3d 630, 636, 957 N.E.2d 780, 785 (Ohio App. 1 Dist. 2011) (declining to apply doctrine to bar conversion claim). Such a proposition is replete in the case law; courts have repeatedly rejected application of the doctrine to intentional torts. *See Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2013 WL 1386298, at *4 (S.D. Ohio Apr. 4, 2013) (holding that Ohio's doctrine did not bar conversion claim); *Pride of Hills Mfg. Inc. v. Range Resources-Appalachia, LLC*, No. 5:09CV02764, 2011 WL 2116455, at *6-7 (N.D. Ohio May 27, 2011) (declining to apply the doctrine to intentional torts claims); *Hodell-Natco Indus., Inc. v. SAP America, Inc.*, No. 1:08-cv-02755, 2010 WL 6765522, at *11 (N.D. Ohio Sept. 2, 2010) ("It does not appear that Ohio courts intended to extend the economic loss rule beyond negligence actions to bar intentional torts as well."); *Reengineering Consultants, Ltd. v. EMC Corp.*, No. 2:08-cv-47, 2009 WL 113058, at *6 (S.D. Ohio Jan. 14, 2009) ("The economic loss rule prevents recovery in negligence of purely economic loss, not recovery under an intentional tort theory for economic loss.").

ODW disagrees with the proposition that Ohio's economic loss doctrine does not extend to intentional torts. To support is position, ODW relies upon *Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59 (6th Cir. 2009), a case in which the Sixth Circuit addressed whether under Ohio law the existence of a contract action prevented a buyer from asserting a conversion claim against a seller. The court of appeals explained:

> As in all tort actions that are "factually intertwined" with a contract, "[i]n conversion actions, Ohio Courts have held, '[s]uch tort claim lies against a contracting party

7

independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract.' " *Jean v. Stanley Works*, No. 1:04-CV-1904, 2006 WL 1966644, at *5, 2006 U.S. Dist. LEXIS 50027, at *14 (N.D. Ohio July 5, 2006) (quoting *DeNune v. Consol. Capital of N. Am., Inc.*, 288 F. Supp.2d 844, 854 (N.D. Ohio 2003)). Here, the "wrongful act" alleged must be wrongful for reasons other than breach of a contract.

*Id.* at 67. The Sixth Circuit also recognized that

Ohio law requires that "[i]n addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract." [*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261, 1271 (Ohio App. 9 Dist. 1996)]. The actual damages resulting from the alleged conversion would necessarily be identical to those resulting from the corresponding breach of the Operating Agreement's provision on distributions and/or the ostensible breach of the Purchase Agreement. Thus, insofar as the conversion claim is based on the collection of monies in violation of the Operating and/or Purchase Agreements, it fails as a matter of law.

*Id.* at 67-68. Thus, ODW reasons, there is support for preclusion of the conversion counterclaim.

Karmaloop asserts that ODW had a duty independent of the TSA that supports the counterclaim for conversion. Karmaloop contends that, "as the bailee of Karmaloop's goods, ODW plainly had a duty not to steal, destroy, or withhold Karmaloop's goods that was independent of any contractual obligations ODW may have had under the TSA or the [Warehouse Distribution Services Agreement]." (ECF No. 48, at Page ID # 380.)

The premise that the bailor-bailee relationship can create a tort claim for relief is grounded in Ohio law. One state court of appeals has explained:

A bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when this special purpose is accomplished or retained until the bailor reclaims the property. The duty of the bailee is to hold the property in accordance with the terms of the bailment. Bailment involves the transfer of a possessory interest only and not an ownership interest in property. A bailment may be for the benefit of only the bailor or bailee, or for the mutual benefit

> of both. . . . As stated in paragraph two of the syllabus of *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 29 O.O. 426, 58 N.E.2d 658, the failure of a bailee to redeliver the bailed property to the bailor upon legal demand creates a cause of action either in contract or in tort, either of which may be pursued at the election of the bailor.

*Tomas v. Nationwide Mut. Ins. Co.*, 79 Ohio App.3d 624, 628-29, 607 N.E.2d 944, 946-47 (Ohio App. 10 Dist. 1992). Applying this approach here, the parties' dispute is not simply a disagreement over contractual non-performance. Rather, it is a dispute over the fact that ODW allegedly has kept Karmaloop's property in contravention of the bailor-bailee relationship. This relationship is not purely governed by contract. As this Court previously explained in its decision on the motion to dismiss, Section IV of the TSA does not impose an affirmative duty, it only limits liability under specific circumstances. In other words, ODW had to give back what did not belong to ODW, regardless of any potential contractual caps on damages.

ODW rejects Karmaloop's assertion of an independent basis with fairly straightforward reasoning. According to ODW, Karmaloop's ability to seek relief for inventory shortage necessarily arises only out of the TSA  As a result of the TSA and the Release, there is no requisite duty independent of the TSA that is not subsumed by the parties' agreement. Although ODW would normally have had an independent legal duty as a bailee to return all of its bailor's goods, ODW posits that Ohio Revised Code § 1307.403(A)(6) qualifies this duty when parties have executed a release such as found here. The TSA and Release therefore control the duty ODW owed Karmaloop so that there is no independent duty to support the conversion claim. ODW thus concludes that it is entitled to summary judgment on the conversion counterclaim.

The problem with ODW's analysis is that it bypasses the fact that the argument hinges on an enforceable release of an intentional tort. A release of a future intentional tort is void as

against public policy. *See Denlinger v. City of Columbus*, No. 00AP-315, 2000 WL 1803923, at *7-8 (Ohio App. 10 Dist. Dec. 7, 2000). Thus, the Release involved in this case controlled all prior claims between the parties and all future claims, with two exceptions: a breach of contract claim when the Confirmation Inventory exception applied (which it does not due to Karmaloop's untimeliness) and intentional tort claims (based on public policy qualifying the scope of the release). Therefore, two points are necessary. One, despite the broader characterization ODW affords it, this Court's prior motion to dismiss decision was necessarily and inherently limited to those claims falling within the scope of the parties' contractual agreements. Two, the TSA and the Release therefore permit the conversion counterclaim, which falls outside the contractual agreements because there is no applicable release under Ohio Revised Code § 1307.403(A)(6) or any other lawful excuse under Ohio Revised Code § 1307.403(A)(7).

This leads to the final point of contention regarding the conversion counterclaim, specifically, whether the tort damages are the same as what Karmaloop could pursue under a breach of contract claim. Section IV(c) of the TSA provided that ODW would be liable for inventory shortages that were in excess of a total net inaccuracy of 7.5 percent based on a timely Confirmation Inventory. This was a limitation on damages relevant to a breach of contract claim. The potential actual damages attributable to the tort counterclaim of conversion are not so limited, with the greater amount available via tort constituting damages that would be in addition to those attributable to the breach of the contract. What this means is that, even assuming *arguendo* that the economic loss doctrine could apply to the intentional tort involved here, there is an independent duty and additional actual damages that would remove the conversion claim from that doctrine. ODW is therefore not entitled to summary judgment on the conversion

counterclaim.

### 3. Breach of Contract

In Case No. 2:13-cv-270, Karmaloop asserts a claim for breach of contract.  ODW seeks summary judgment on this claim on the theory that the same rationale that proved dispositive in regard to ODW's declaratory judgment claim discussed above also proves dispositive here.  This Court agrees.  The enforceable TSA and the Release bar Karmaloop from now asserting its breach of contract claim as a matter of law, which entitles ODW to summary judgment.

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing

In Case No. 2:13-cv-270, Karmaloop asserts a claim for breach of implied covenant of good faith and fair dealing.  ODW seeks summary judgment on this claim.  In response, Karmaloop states in in memorandum in opposition that it "agrees to refrain from pursuing a separate cause of action for breach of the covenant of good faith and fair dealing."  (ECF No. 48, at Page ID # 373 n.1 and Page ID # 378 n.34.)  Based on this concession, the Court also enters summary judgment on behalf of ODW on the abandoned claim for breach of implied covenant of good faith and fair dealing.

### III.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** ODW's motion for partial summary judgment.  (ECF No. 42.)  Karmaloop's second counterclaim for conversion and third counterclaim in Case No. 2:12-cv-996, asserting a violation of M.G.L. c. 93A, remain pending.

**IT IS SO ORDERED**.

                                        /s/ Gregory L. Frost
                                  GREGORY L. FROST
                                  UNITED STATES DISTRICT JUDGE